**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

JEANNE N.,[1]

        **Plaintiff,**

v.

**Commissioner, Social**
**Security Administration,**

        **Defendant.**

6:19-cv-01212-BR

OPINION AND ORDER

**SHERWOOD J. REESE**
**DREW L. JOHNSON**
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401
(541) 434-6466

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, WA 98104
(206) 615-3706

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Jeanne N. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Disabled Widow Benefits (DWB)[1] under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

---

    [1] "Disabled Widow benefits are a type of Title II benefit. 42 U.S.C.A. § 402(e).  The same disability definition [and analysis as that for DIB] applies but the date last insured is determined by the deceased's work history." *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *2 (E.D. Cal. Jan. 2, 2019)(citing 42 U.S.C. § 402(e)(1)(B)).

### ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and DWB on June 30, 2016, alleging a disability onset date of May 20, 2016.  Tr. 154, 160.[2]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on July 20, 2018.  Tr. 28-63.  Plaintiff was represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on October 16, 2018, in which she found Plaintiff was not disabled before December 31, 2016, the end of her prescribed period, and, therefore, Plaintiff is not entitled to benefits.  Tr. 16-23.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on June 5, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

### BACKGROUND

Plaintiff was born on September 7, 1962, and was 56 years old at the time of the hearing.  Tr. 160.  Plaintiff has a high-school education.  Tr. 34.  Plaintiff has past relevant work experience as a stock clerk, material handler, machine paint

---

[2] Citations to the official transcript of record filed by the Commissioner on January 2, 2020, are referred to as "Tr."

mixer, and store manager.  Tr. 55.

Plaintiff alleges disability during the relevant period due
to pelvic congestion syndrome and pelvic floor myalgia.  Tr. 65.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 20-22.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate her
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must

assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set

forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

The ALJ found Plaintiff is the widow of a "deceased insured worker and has attained the age of 50,"[3] and, therefore, Plaintiff "met the non-disability requirements for disabled widow's benefits."  Tr. 19.

In her Regulatory Sequential Evaluation the ALJ found as follows:

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from her May 20, 2016, alleged onset date through her December 31, 2016, prescribed period end. Tr. 19.

At Step Two the ALJ found Plaintiff had the severe impairments of pelvic congestion syndrome and pelvic floor myalgia during the relevant period.  Tr. 19.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 19.  The ALJ found during the relevant period that

---

[3]  The deceased worker was Plaintiff's first husband who died in 2009.

Plaintiff had the RFC to perform light work

> except she could frequently climb ramps and stairs
> and never climb ladders, ropes, or scaffolds.  She
> could occasionally kneel, and crouch.  She could
> frequently crawl.  She would need to avoid all
> exposure to workplace hazards.

Tr.

At Step Four the ALJ found Plaintiff could not perform her past relevant work during the relevant period.  Tr. 22.

At Step Five the ALJ found Plaintiff could perform other work that existed in the national economy during the relevant period.  Tr. 22-23.  Accordingly, the ALJ concluded Plaintiff was not disabled during the relevant period and, therefore, is not entitled to benefits.  Tr. 23.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) gave only "partial weight" to the Third-Party Function Report and letter of Matt N., Plaintiff's second husband; and (3) gave "less weight" to the May 2016 opinion of Linda Fox, M.D., treating physician.

## I.    The ALJ erred when she partially rejected Plaintiff's testimony.

As noted, Plaintiff contends the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that she stopped working in May 2016 due to pain she experienced when standing or sitting for long periods.  In addition, the medication she was taking made her tired and unable to focus.  Plaintiff noted she began working as a stocking clerk and retail manager in 2014.  In those jobs she was regularly lifting up to 50 pounds, but her pain level began to increase.  In June 2014 Plaintiff underwent an ovarian vein embolization, which provided her with some pain

relief for a few weeks, but then she began experiencing pain
again.  In November 2015 Plaintiff underwent another procedure,
and she was put on light duty that included lifting no more than
ten pounds.  By May 2016 Plaintiff found "no matter what [she]
was doing at [her] job as long as [she] was on [her] feet or even
if [she had] to sit for long periods of time . . . [, she]
need[ed] to be able to get [her] feet elevated" to relieve her
pain.  Tr. 41.  Plaintiff's employer reduced her hours after
November 2015, but Plaintiff still continued to experience pain
both when she was "on her feet" at work and during her drive to
and from work.  Plaintiff testified she needed to elevate her
legs five or six times per day for a total of one or two hours to
alleviate pain during the relevant period.  Plaintiff noted she
could be "up for 20 minutes and then . . . down for a good hour
to two hours."  Tr. 49.  Plaintiff stated "sitting is better than
. . . standing," but "the sitting is much better [when she's]
sitting at an angle off [her] pelvic area."  Tr. 50.  Plaintiff
testified she was taking Gabapentin and medical marijuana
capsules for pain during the relevant period and the combination
was "helpful," but she was unable to drive while taking those
medications.  Tr. 45.

     The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms" during the relevant period, but Plaintiff's testimony

"concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely consistent with the medical evidence and other evidence in the record."  Tr. 20. Specifically, the ALJ noted Plaintiff had "been able to work with her condition in the past" despite "complaints of pelvic pain since 2012"; the record contains "few medical records during the time period at issue"; "no discrete cause of [Plaintiff's] pain was identified"; and Plaintiff's medications "worked fairly well for her."  Tr. 20-21.

The record reflects in June 2014 Plaintiff underwent an ovarian vein embolization in an effort to alleviate her pain.  In June 2015 Plaintiff reported to Michelle Curtis, M.D., treating physician, that she had "partial relief" from the June 2014 procedure and "had been doing fairly well, just taking ibuprofen daily for her discomfort until about" May 2015.  Tr. 277.  In May 2015 Plaintiff told Dr. Curtis that she is "usually fine first thing in the morning, but as she is up on her feet the symptoms worsen."  Tr. 277.  Plaintiff explained she "does a fair amount of heavy lifting at her job [and when] . . . she is not working . . . she is equally physically active . . . at home." Tr. 277.  Dr. Curtis prescribed hydrocodone for Plaintiff's pain and recommended Plaintiff undergo a "direct pelvic venogram with probable embolization at the level of the hypogastric vein." Tr. 279.  On September 15, 2015, Plaintiff reported to John

Kaufman, M.D., treating radiologist, that she had three months of
relief from her symptoms after her June 2014 procedure, but then
her symptoms returned. Plaintiff told Dr. Kaufman that she "is
asymptomatic in the morning and upon standing she begins to feel
pressure that gets more intense so that by 10 am she requires
medication." Tr. 250. Plaintiff also explained to Dr. Kaufman
that she "often lifts 20-30 pounds" at her job, "which makes the
symptoms worse." Tr. 250. Dr. Kaufman noted Plaintiff has
pelvic congestion syndrome with "likely . . . internal iliac vein
reflux." Tr. 252. Dr. Kaufman recommended Plaintiff have an MRI
"to assess the uterus as well as the periuterine and perivaginal
veins." Tr. 252. Dr. Kaufman advised Plaintiff "that she will
have more pain after the procedure due to inflammation around the
sclerosed veins and that at best there is an 80% success rate."
Tr. 252. On November 5, 2015, Plaintiff reported to Dr. Curtis
that she had been "managing her symptoms with hydrocodone," but
the medication was "making her feel increasingly dizzy and
lightheaded." Tr. 269. Plaintiff told Dr. Curtis that she "has
a fairly physical job and has felt unable to complete her daily
work tasks on medication [and] . . . has not felt safe driving[,]
. . . therefore . . . she has been trying to go without
medication during the day," but her pain is intolerable.
Tr. 269. On November 19, 2015, Plaintiff underwent a second
bilateral hypogastric vein embolization. Plaintiff reported to

Dr. Curtis on February 18, 2016, that she had pain relief for
three weeks after her second embolization, but then she started
having pain again.  Plaintiff advised Dr. Curtis that she was
working part-time and able to manage by taking one vicodin in the
morning and half a tablet in the evening, but without vicodin she
did not believe she could make it through the day due to pain.
Plaintiff also told Dr. Curtis that the surgeon "offered to try
another procedure but [Plaintiff] is reluctant to do that
[because] her . . . procedure was not covered [by her insurance
and] she currently owes $20,000 for the procedure."  Tr. 266.
Dr. Curtis discussed with Plaintiff whether a hysterectomy could
improve Plaintiff's symptoms, but she recommended against it
because Plaintiff's pain "is really not localized to the uterus
and really never has been."  Tr. 267.  On May 5, 2016, Plaintiff
was seen by Linda Fox, M.D., treating physician, who noted
Plaintiff's pelvic MRI and ultrasound were "essentially normal."
Tr. 310.  In light of these results Dr. Fox stated she believed
Plaintiff's "pain is coming from the pelvic floor and likely will
respond to pelvic floor physical therapy and/or gabapentin."
Tr. 310.  Dr. Fox also advised Plaintiff that it "is a
possibility" that her part-time job, which "involves a lot of
heavy lifting and squatting," could be exacerbating her symptoms.
Tr. 310.  Plaintiff was seen by a physical therapist for
evaluation in June 2016, but it was not covered by her insurance

and Plaintiff could not afford to pay for the out-of-pocket
expense.  Tr. 327.  In December 2016 Plaintiff told Patrick Rask,
M.D., treating physician, that "high CBD low THC capsules . . .
in combination with Gabapentin work[ed] fairly well" at
controlling her pain.  Tr. 327.  Dr. Rask, however, noted
Plaintiff had an "antalgic gait, short, slow steps[,] . . .
limited ROM and pain with flexion/extension and bending forward."
Tr. 328.

The record, therefore, reflects even though Plaintiff's pain
medications worked "fairly well" for her toward the end of the
relevant period, she still had limited range of motion, antalgic
gait, and pain with flexion/extension.  In addition, although
Plaintiff did not choose to undergo a third surgery, it was
because her insurance would not cover the surgery and she had
already accrued $20,000 in medical expenses related to her
previous surgery.  Similarly, although Plaintiff had some relief
from physical therapy, she had to discontinue it because her
insurance would not cover it and she could not afford to pay the
out-of-pocket expenses.  In addition, although Plaintiff was able
to work with her condition "in the past," the record reflects she
had to go down to part-time work due to pain after her November
2015 procedure failed to provide significant long-term pain
relief and her medications made her unable to concentrate.  The
ALJ also noted the record contained "few medical records during

the time period at issue." The period at issue, however, is only eight months and during that time Plaintiff's treating physicians concluded a hysterectomy would not be effective in relieving her pain, Plaintiff could not afford another surgery or physical therapy, and Plaintiff's treatment options were limited to pain medication. The limited number of medical records during the relevant period, therefore, is not indicative of Plaintiff's lack of symptoms or pain. At each of her visits with treating physicians Plaintiff noted continuing pain, an inability to stand or to sit for prolonged periods, and the limited efficacy of her pain medications.

The Court concludes on this record that the ALJ erred when she partially rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of Plaintiff's symptoms because the ALJ did not support her opinion with substantial evidence in the record.

**II.  The ALJ erred in part when she gave only partial weight to the Third-Party Function Report and letter of Matt N., Plaintiff's husband.**

Plaintiff alleges the ALJ erred when she gave only partial weight to the Third-Party Function Report and letter of Matt N., Plaintiff's husband.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

On July 9, 2016, Matt N. completed a Third-Party Function Report in which he stated Plaintiff suffered symptoms and limitations similar to those set out by Plaintiff in her testimony. Specifically, he stated Plaintiff "cannot stand, sit, [or] walk for [a] sustained amount of time." Tr. 194. Matt N. noted Plaintiff's pain "is slightly better in the early hours so she does light chores then,[ but she] must be fairly immobile later in [the] day as pain gets worse." Tr. 194. In addition, Matt N. noted Plaintiff can do "light chores" throughout the day with rest periods in between. Plaintiff is not able to drive because her medication makes her "foggy [and] lightheaded" and gives her "poor balance." Tr. 197. Plaintiff can walk "1/2-1 mile" at a slow pace before she has to rest for ten or twenty minutes; can "only lift light weight"; and has trouble squatting, bending, standing, reaching, sitting, kneeling, and climbing stairs. Tr. 199.

17 - OPINION AND ORDER

On May 14, 2018, Matt N. submitted a letter in which he
stated Plaintiff had temporary relief from pain after her
June 2014 embolization, but her pain returned and she was "no
longer able to work full time and moved into a part time
position." Tr. 245. By the summer of 2015 Plaintiff's pain
became worse. "Many days she would come home and have to lay out
flat with the heating pad for hours." Tr. 245. After her second
embolization procedure in November 2015 Plaintiff had temporary
pain relief, but after a month her pain returned. Plaintiff
"struggled to remain employed [and] . . . would be overwhelmed
with pain at the end of the day." Tr. 246. "Between the pain
and the effects of [Plaintiff']s medication it became harder for
[her] to continue her employment and in May of 2016" Plaintiff
quit her job. Tr. 246. Matt N. noted

> [d]uring this period [Plaintiff's] pain was
> virtually non stop [*sic*], she struggled doing
> regular daily chores in the home. The side
> effects of the pain medication caused her to stop
> driving, one of the reasons she had to leave her
> job. She needed my assistance in most aspects of
> her daily life. She spent many days on her back
> with the heating pad trying to get relief from the
> pain.

Tr. 246.

The ALJ gave only "partial weight" to Matt N.'s statements
on the ground that they "did not focus on [Plaintiff's] specific
functioning during the time period at issue beginning in 2016."
Tr. 21. As noted, however, Matt N. submitted his Third-Party

18 - OPINION AND ORDER

Function Report on July 9, 2016, which was during the relevant
period, and he discussed Plaintiff's functioning at the time of
the Report.  Matt N., therefore, "focus[ed] on [Plaintiff's]
specific functioning during the time period at issue."  The
Court, therefore, concludes the ALJ erred when she partially
rejected Matt N.'s Third-Party Function Report because the ALJ
did not give reasons germane to Matt N. supported by substantial
evidence in the record for doing so.

As noted, the ALJ also partially rejected Matt N.'s 2018
letter on the ground that in it Matt N. "did not focus on
[Plaintiff's] specific functioning during the time period at
issue."  In his May 2018 letter Matt N. focuses on Plaintiff's
symptoms and issues up to Plaintiff's May 2016 onset date.  The
Court, therefore, concludes the ALJ did not err when she
partially rejected Matt N.'s May 2018 letter because the ALJ gave
a reason germane to Matt N. supported by substantial evidence in
the record for doing so.

**III. The ALJ did not err when she gave "less weight" to the May
2016 opinion of Dr. Fox.**

Plaintiff asserts the ALJ erred when she gave "less weight"
to the May 2016 opinion of Dr. Fox, treating physician.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial

19 - OPINION AND ORDER

evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On May 16, 2016, Dr. Fox provided a letter to the Human Resources Department of the store at which Plaintiff was working and stated: "It is my medical opinion that [Plaintiff] may not lift more than 10 pounds because of her diagnosis of pelvic floor myalgia." Tr. 421.

The ALJ gave less weight to Dr. Fox's opinion on the ground

that "the record supports the finding that [Plaintiff] has fewer
exertional limits, akin to those assessed by" nonexamining
physicians Neal Berner, M.D., and Sharon Eder, M.D.  Tr. 21.
Drs. Berner and Eder opined Plaintiff could lift and/or carry 20
pounds occasionally and 10 pounds frequently.[4]  Tr. 70, 81.  The
ALJ gave "great weight" to Dr. Berner's opinion and "significant
weight" to Dr. Eder's opinion.  The ALJ explained she gave great
weight to Dr. Berner's opinion because "he reviewed the
longitudinal medical evidence or record and explained the basis
of his opinion, which is consistent with the record."  Tr. 21.
The ALJ found Dr. Fox's opinion, on the other hand, was brief and
conclusory.  As such, the ALJ was not required to accept it.
*See, e.g., Ford v. Saul*, 950 F.3d 1141. 1154 (9th Cir. 2020)
("'The ALJ need not accept the opinion of any physician,
including a treating physician, if that opinion is brief,
conclusory, and inadequately supported by clinical
findings.'")(quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th
Cir. 2002)).  In addition, Dr. Fox's treatment notes do not
contain any limitation to lifting only ten pounds or less.  For
example, on April 14, 2016, Plaintiff asked Dr. Fox whether her
part-time job, "which involves a lot of heavy lifting and
squatting," could be "making her pain worse."  Tr. 310.  Dr. Fox

---

[4] Drs. Berner and Eder defined occasionally as "1/3 or less
of an 8 hour day" and frequently as "cumulatively more than 1/3
up to 2/3 of an 8 hour day."  Tr. 70, 81-82.

told Plaintiff "it is a possibility," but she did not direct Plaintiff to carry less than a particular amount of weight.

On this record the Court concludes the ALJ did not err when she gave less weight to Dr. Fox's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.


**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would

22 - OPINION AND ORDER

serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he partially rejected Plaintiff's testimony and partially rejected Matt N.'s Third-Party Function Report. Plaintiff and Matt N. stated Plaintiff needed to lie down at various times during the day. Specifically, Plaintiff testified she needed to lie down five or six times a day for one or two hours. Matt N. stated Plaintiff is "fairly immobile later in [the] day" and Plaintiff can do "light chores" throughout the day with rest periods in-between. Tr. 194. The VE testified at the hearing that an employee who needs to lie down three or four times a day for 30 minutes "on an unpredictable basis" would be precluded from work. Tr. 59-60. The Court, therefore, concludes Plaintiff has established the ALJ

23 - OPINION AND ORDER

would be required to find Plaintiff to be disabled if "such evidence [was] credited." Thus, the Court concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 20th day of May, 2020.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge

24 - OPINION AND ORDER